IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

JULIA M. ROBINSON,

      **Plaintiff,**

v.

CHOICE HOTELS
INTERNATIONAL SERVICE
CORP. SERVICE COMPANY,
TERMINIX GLOBAL HOLDINGS,
INC., THE UNITED STATES OF
AMERICA, JANE DOES, and JOHN
DOES,

      **Defendants.**

CIVIL ACTION FILE

NO. 1:22-CV-3080-MHC

## <u>ORDER</u>

Before the Court is Defendant Choice Hotels International, Inc. ("Choice

Hotels")'s[1] Motion to Dismiss ("Choice Hotel's Mot. to Dismiss") [Doc. 12],

Defendant Terminix Global Holdings, Inc. ("Terminix") 's Motion to Dismiss

("Terminix's Mot. to Dismiss") [Doc. 26], Plaintiff's Petition and Motion for

Temporary Restraining Order and/or Preliminary Injunction ("Mot. for TRO")

---

[1] Plaintiff incorrectly identifies Choice Hotels as "Choice Hotels International
Services Corp. Service Company."

[Doc. 9], Plaintiff's Petition and Second Motion for Temporary Restraining Order and/or Preliminary Injunction ("Second Mot. for TRO") [Doc. 22], and Plaintiff's Motion for U.S. Marshals to Serve Summons [Doc 18].

## I.    BACKGROUND[2]

Plaintiff's Amended Complaint is thirty-four pages, single spaced, and difficult to follow.  Id.  Although Plaintiff is invoking federal question jurisdiction, asserting a claim under the Federal Tort Claims Act ("FTCA"), see Civil Cover Sheet [Doc. 1-1] (indicating that the "Federal Tort Claims Act" is her "cause of action"), she includes a litany of other federal criminal and civil statutes as well as state law causes of action that are allegedly "at issue" in her case:

> The Federal Tort Claims Act (28 U.S.C. 1291, 1346, 1402, 2401, 2402, 2411, 2412, and 2671 through 2680) (August 2, 1946, ch. 646, Title IV, 60 Stat. 812, 28 U.S.C. Part VI, Chapter 171 and 28 U.S.C. § 1346, Civil Rights Lawsuit: Text of Section 1983, Personal Injury (Sec. 95.11 (3)(a)&(o)., Claims Against State & Local Governments (Sec. 768.28(6)., No Cap On Pain and Suffering (Sec. 768.28(5)., 768.73 Punitive Damages, 18 U.S. Code§ 1964 Civil Remedies, Civil Rights Act Of 1964, Official Misconduct under Florida Statute 838.022, Statute § 838.014(4), Florida Statute § 838.014(5), 768.31 Contribution Among Tortfeasors, Florida Statute, 18 U.S. Code § 2261A - Stalking, U.S. Code § 2332a - Use of weapons of mass destruction, Title 18, U.S.C., Section 241 Conspiracy Against Rights, Title 18, U.S.C.,

---

[2] Because this case is before the Court on a motion to dismiss, the facts are presented as alleged in Plaintiff's Amended Complaint and Request for Injunction ("Am. Compl.") [Doc. 7].  See Silberman v. Miami Dade Transit, 927 F.3d 1123, 1128 (11th Cir. 2019) (citation omitted).

> Section 242 Deprivation of Rights Under Color of Law, 784.011
> Assault, 18 U.S. Code§ 1505 - Obstruction of proceedings before
> departments, agencies, and committees, 42 U.S. Code§ 3617 -
> Interference, coercion, or intimidation, 18 U.S. Code § 1512 -
> Tampering with a witness, victim, or an informant, Obstruction of
> Justice: Witness Tampering (18 U.S.C. §§ 1512, 1503), 18 U.S. Code
> § 2441 - War crimes: intentional attacks against civilians; torture;
> unlawful confinement; 18 U.S. Code § 1038. False information and
> hoaxes, Future Medical Expenses, Household Services (In Home
> Services), Loss of Consortium, Loss of Enjoyment of Life, Loss of
> Society and Companionship, Lost Wages, Medical Expenses, Mental
> Anguish, Pain and Suffering, Special Damages, Lost Some Earning
> Capacity, Disfigurement, Loss of Affection, Intentional Tort, Invasion
> of Privacy, Intentional Infliction of Emotional Distress, Slander, Libel,
> Defamation, Breach of Duty too [sic] use Caution and Care, Hotel
> Security Negligence, and Other Charges.

Am. Compl. at 9 (listing violations of the First, Fourth, Fifth, Sixth, Eighth and

Fourteenth Amendments, as well).  Plaintiff has not separately listed any cause of

action or claim for relief in her Amended Complaint, so it is impossible to discern

what claims she is bringing in this case.[3]

---

[3] Plaintiff's Amended Complaint is a shotgun pleading that does not separately list
any cause of action and is "replete with factual allegations and rambling legal
conclusions." Osahar v. U.S. Postal Serv., 297 F. App'x 863, 864 (11th Cir. 2008)
(citing Strategic Income Fund, LLC v. Spear, Leeds & Kellogg Corp., 305 F.3d
1293, 1295 n.9 (11th Cir. 2002)).  The Eleventh Circuit has routinely found that a
shotgun pleading is the antithesis of the type of pleading required by Federal Rules
of Civil Procedure: to wit, a "short and plain statement of the claim." FED. R. CIV.
P. 8; Strategic Income Fund, 305 F.3d at 1295 n.9 (noting that the Eleventh Circuit
"has addressed the topic of shotgun pleadings on numerous occasions . . . , often at
great length and always with great dismay.").  Consequently, the Eleventh Circuit
has repeatedly condemned the use of shotgun pleadings for "imped[img] the
administration of the district courts' civil dockets in countless ways." PVC

In addition to not clearly indicating what claims she is asserting in this case, the factual basis of her lawsuit is unclear.  It appears that all of the allegations in Plaintiff's Amended Complaint stem in some fashion from something she alleges she witnessed on July 8, 2019:

> Plaintiff witnessed other rouge U.S. Government Employees in prior criminal cases against her family blatantly violate her families [sic] Constitutional Rights and break several laws in that state.  The Plaintiff did proper internal affairs investigation complaints, sworn statements, and complaints with several U.S. Government Departments about what she saw and heard literally right in front of her performed with so much arrogance coupled with authoritarianism so effortlessly by these rouge U.S. Government Employee's [sic].

Am. Compl. ¶ 2 (pages 11 and 18).[4]  Plaintiff does not elaborate on what she saw, what the "criminal cases against her family" involve or involved, or how any constitutional rights or laws were violated.  To the extent the Court is able to

---

Windoors, Inc. v. Babbitbay Beach Const., N.V., 598 F.3d 802, 806 n.4 (11th Cir. 2010).  Among other things, shotgun pleadings require courts to sift through rambling and often incomprehensible allegations in an attempt to separate the meritorious claims from the unmeritorious, resulting in a "massive waste of judicial and private resources."  Id.  "The Eleventh Circuit thus has established that shotgun pleading is an unacceptable form of establishing a claim for relief." Graham v. Mortg. Elec. Registration Sys., Inc., No. 2:11-CV-00253-RWS, 2012 WL 527665, at *1 (N.D. Ga. Feb. 17, 2012) (citing Strategic Income Fund, 305 F.3d at 1296).

[4] Because Plaintiff repeats the numbered paragraphs throughout the Amended Complaint, the Court includes the page number corresponding to the cited paragraph.

discern, the crux of Plaintiff's Amended Complaint appears to be related to alleged acts of retaliation and intimidation based on the aforementioned act of witnessing the unidentified "rogue U.S. Government Employees" on July 8, 2019. See generally, Am. Compl.; see also id. ¶ 6 (pages 11 and 18) ("The Plaintiff was retaliated against by U.S. Government Employees for doing U.S. Government Complaints against U.S. Government Employees."). Specifically, this case appears to arise out of an incident that occurred while Plaintiff was staying at a Quality Inn & Suites in Hollywood, Florida, on October 4, 2019, when some unidentified men knocked on her door. See id. ¶ 7 (pages 12 and 19).

> The Plaintiff was just on the Eleventh Judicial Clerk Of Courts (Professionalism Panel) Website doing a complaint on a Public Defender . . . As the Plaintiff hurried to gather her things to leave to try to make it back to the Eleventh Judicial Clerk Of Courts to get more information regarding her families [sic] fraudulent criminal cases. Before the Plaintiff walked out of the door to leave for good, some men knocked on the door. She peeped while still secured locked in the room. She didn't open the door and she peeped again assuming they had the wrong room. They were not in sight and the Plaintiff then walked to her rental car and secured herself and things inside. What happened right after the Plaintiff got in her car was written and given to the Hollywood Police Officers that came to the same hotel on October 15, 2019 so that the Plaintiff could report the crimes. The Plaintiff's phone was hacked, these men could have gotten her hotel/room information directly out of her phone while using the hotels Wi-Fi or some one [sic] inside the hotel gave these men the Plaintiff's room number.

Id. Plaintiff alleges that she "believes" that unidentified men were "rogue U.S. Government employees" and came to her room "to either kidnap, rape, or murder

her." Id. ¶¶ 8-9 (pages 12 and 19).  Plaintiff does not allege any facts that explain

why she thinks the two unidentified men who knocked on her door were there to

harm her.  Nor does Plaintiff allege any facts that explain why she thinks the two

unidentified men were "rouge U.S. Government employees," apart from alleging in

conclusory fashion that

> [i]t was obvious that these men whom showed up randomly right after
> I got off of The Eleventh Judicial Clerk Of Courts website, The Dade
> County Public Defenders website, and the Local Attorneys Complaints
> website for putting in a complaint while on that hotels [sic] Wifi was
> [sic] U.S. Government Employees or affiliates.

Id. ¶ 11 (pages 13 and 20).

On October 15, 2019, Plaintiff contacted the Hollywood, Florida, Police

Department to report the incident where the two unidentified "rouge U.S.

Government employees" knocked on her motel door, but alleges that the police

officers did not properly handle her complaint and

> blatantly refused to properly write the correct information on her police
> report of what happened to her on October 4, 2019 and The Hollywood
> Police Department refused to properly investigate crimes committed by
> rouge U.S. Government employees, possible relatives of the U.S.
> Government Employees, and possible Friends Of U.S. Government
> Employee's pertaining to my families [sic] fraudulent criminal case.

Id. ¶ 9 (pages 12 and 19).

Plaintiff also alleges that one police officer's questioning of her, specifically,

whether she "want[ed] to hurt [her]self in anyway," was a "fear tactic (Political

abuse of psychiatry) and abuse of The Florida Baker Act Law (Involuntarily Baker Act)." Id. ¶ 10 (pages 13 and 20). Another police officer asked Plaintiff if she was on medication, and Plaintiff alleges that this question was prompted because of her race and she responded to the police officer as follows:

> You don't have to be on medication to be stalked. I'm not trying to insult anyone here, if I was not black you guys would believe me. You wouldn't ask me if I was on medication, was I crazy, did you have psychotic whatever in the past. You would take my word for it so, that's how I feel.

Id. ¶ 12 (pages 13 and 20) (alleging that this act of questioning from the police constituted "Political abuse of psychiatry, Gaslighting, and Abuse Of The Florida Involuntary Baker Act Law.").

Plaintiff went to the Hollywood, Florida, Police Department days after reporting the October 4, 2019, incident involving the unidentified "rogue U.S. Government employees" to retrieve the police report and alleges that the report was deliberately "written incorrectly . . . for the purposes of not revealing the identities of these men whom she caught on video." Id. ¶ 14 (pages 13 and 20). She does not allege how the report was incorrect. She alleges that she made the police officers aware that "she was a witness in a prior fraudulent criminal case against her family and that U.S. Government Employee's were involved criminally." Id. She alleges that she attempted to get the police report corrected,

but the Hollywood Police Department did not help or properly assist her. Id. ¶¶ 13,

15, 18 (pages 13-14 and 20-21). Plaintiff alleges further that she

> wasn't believed because She's a black woman whom just so happened
> to solve crimes committed against herself on her own with no help of
> U.S. Government Employees whom tried to save a White family from
> going to jail because they lied to have The Plaintiff's family illegally
> arrested. U.S. Government Employees participated in these crimes to
> cover up for each other after covering up for the White family.
> ***
> The Plaintiff has never in her life felt like she didn't matter until she
> wasn't properly assisted legally and she wasn't believed because of the
> color of my skin. Police Officers were told not to properly assist The
> Plaintiff because a White woman and her kids whom told lies to get
> someone illegally arrested were in distress and the truth was unfolding.
> That was one of the biggest slaps in her face, The Criminal Judicial
> System blatantly racially discriminated against The Plaintiff.

Id. ¶¶ 16, 19 (pages 14 and 21). Plaintiff does not allege any facts explaining the

crimes she solved or any illegal arrests.

The remainder of Plaintiff's Amended Complaint is more difficult to follow,

more disjointed, and replete with conclusory allegations related to some sort of

conspiracy to kidnap, rape, and kill Plaintiff and her family, none of which appears

to be associated with any cause of action asserted in the Amended Complaint. See,

e.g., id. ¶¶ 17 (pages 14 and 21) ("U.S. Government Employees along with

Affiliates attempted to take The Plaintiff's life away."), 18 (pages 14 and 21)

("They collectively colluded to attempt to murder a black woman and her family to

win a fraudulent criminal case."), 20 (pages 14-15 and 22) ("The Plaintiff also has

8

admissible evidence of footage and photos of someone using military Grade GPS tracking/spyware whom works for the U.S. Government tracking her locations down to the street name and numbers on the buildings. The Plaintiff was being unconstitutionally surveilled the whole time during those incidents.  Thats [sic] why no officer properly investigated any of The Plaintiff cases because they all work for The U.S. Government and Private Company Affiliates."), 23 (pages 15 and 22) ("The Plaintiff was physically and mentally tortured by corrupt U.S. Government employees and possibly kidnaped, raped, and killed."), 25 (pages 15-16 and 23) ("The men whom committed crimes against the Plaintiff Identities [sic] were concealed for Political Favors, Graft, Possible Social Initiation's [sic].").

Plaintiff also alleges that "there have been several assassination attempts on The Plaintiff and her families [sic] lives since doing complaints with all U.S. Government Employee Departments involved." Id. ¶ 1 (page 25).  For example, Plaintiff alleges that in February of 2022, her domestic partner was eating at a restaurant and "a flesh eating bug (biochemical weapon) was strategically placed in his food (Assassination attempts), this pathogen ate out holes in his face within hours of leaving this restaurant."  Id. ¶ 2 (page 26); see also id. ¶¶ 2 (page 27) (alleging that in February of 2022 while in a hotel in Palm Beach County, Florida, "toxic chemical fumes" were introduced into Plaintiff's and her family's room), 3

(page 29) (alleging that toxic chemical fumes were introduced into Plaintiff's home and car by "U.S. Government Employee's/Affiliates and Private Companies involved criminal hires."), 6 (page 30) (alleging that her car was hijacked and outfitted wit a device that "zaps electrical charges to the top of whom ever is driving head every so often."). The lone allegation against Defendant Terminix is that a Terminix employee "was the look out [sic] for these men at the hotel therefore he participated in this crime and is a co-conspirator." Id. ¶ 31 (pages 17 and 25).

Plaintiff seeks $73,398,920.00 in damages because "Defendants didn't bother to properly follow up with the Plaintiff regarding a response pertaining to this FTCA Claim and getting it resolved." Id. ¶ 1 (page 32-33). Further, Plaintiff alleges that the

> Defendants chose to participate until present day in on [sic] illegal, barbaric, and unconstitutional WAR CRIMES against the Plaintiff and her family. The Defendants had a duty and owed service to the plaintiff/victim. The Defendants failed that duty, and violated a promise or obligation to the Plaintiff. The Plaintiff suffered actual losses, injuries, and damages that were directly caused by the Defendants actions or failure to act. The Plaintiff and her children are going to need hired security for the rest of their lives because of the amount of people, Companies, and U.S. Government Employee's [sic] involved in these WAR crimes against the Plaintiff. The facts above are showing that the Plaintiff is entitled to have this injunction and other relief sought in this complaint granted.

Id. Plaintiff does not clarify what sort of injunctive relief she is seeking.

10

## II.   PROCEDURAL BACKGROUND

Plaintiff filed the above-styled case on August 4, 2022 [Doc. 1], and amended her complaint on August 24, 2022.  On October 11, 2022, Plaintiff filed a 138-page, single-spaced Petition for Temporary Restraining Order And/or Preliminary Injunction which, to a great extent, is identical to her Amended Complaint.  See, e.g., Mot. for TRO ¶¶ 1-25, 58-61.  Additionally, Plaintiff's Motion for TRO contains more conspiratorial factual allegations against various medical professionals and other individuals she has encountered since October 2019, as well as random definitions of legal concepts with no apparent relevance to this case.  See, e.g., id. ¶¶ 26-57, 62, 66-70, 102.  Plaintiff's Motion for TRO also contains nonsensical legal references.  See, e.g., id. ¶¶ 63-65, 71-101.  The remainder Plaintiff's Motion for TRO appears to be random cut-and-pasted legal cites.  See, e.g., id. at 47-138.

On December 12, 2022, Defendant Choice Hotels filed its motion to dismiss, arguing that the claims asserted against it should be dismissed because Plaintiff failed to serve it within the time permitted under Rule 4(m) of the Federal Rules of Civil Procedure and that Plaintiff has failed to state a claim against Choice Hotels upon which relief can be granted.  Choice Hotel's Mot. to Dismiss at 3-6.

On January 4, 2022, this Court ordered Plaintiff to show cause why this case should not be dismissed for failure to effectuate service pursuant to Rule 4(m) as to any defendant [Doc. 14].  On January 31, 2023, Plaintiff filed what purports to be an affidavit of service, indicating that Choice Hotels was served on January 25, 2022 [Doc. 21].

On March 23, 2023, Terminix filed a motion to dismiss arguing that the claims asserted against it should be dismissed because Plaintiff failed to serve it within the time permitted under Rule 4(m) of the Federal Rules of Civil Procedure, and that Plaintiff has failed to state a claim against Choice Hotels upon which relief can be granted.  Terminix's Mot. to Dismiss at 2-6.

## III.  MOTION FOR TEMPORARY RESTRAINING ORDER

As detailed above, it is unclear what injunctive relief Plaintiff seeks in her Motion for TRO.  See Pl's. Mot. for TRO.  Plaintiff's Second Motion for TRO is largely repetitive of the original Motion for TRO and equally incomprehensible. See Pl.'s Mot. for Second TRO.  It consists of disjointed allegations related to some conspiracy to harm her and her family, replete with cut-and-pasted legal and medical definitions and devoid of factual assertions:

> The Defendants are illegally, blatantly, and unconstitutionally disregarding the law by participating/performing/conspiring in/ and or executing racially discriminatory activities by illegal use of Analytical Chemistry Studies without any authorization and or consent and regard

12

of The Plaintiff, The Plaintiff's Family and Witnesses Physical and Mental Health. These racially motivated attacks and murder attempts are making The Plaintiff, The Plaintiff's Family, and Witnesses SICK. These racially motivated assaults (gauged under so called research) and assassination attempts are clear examples of OBSTRUCTION. Illegally racially targeting by use of scientific methods are extremely pathetic, desperate, and ridiculous. Proxy war tactics aren't going to force The Plaintiff to do anything she doesn't want to do. The Plaintiff isn't a SLAVE, The Plaintiff never desired to work for any form of Government and never WILL. Neither does The Plaintiffs Family desire to work in government and NEVER WILL. The Defendants idea is to desperately make The Plaintiff appear as if she isn't competent and is abusing drugs by use of Air purifiers pumping Electrospray pre clinical drugs/nano particles/toxic substances/toxic chemicals/toxic chemical compounds/gases/vapors. Eletrospray is used in some air purifiers. Particulate suspended in air can be charged by aerosol electrospray, manipulated by an electric field, and collected on a grounded electrode. This approach minimizes the production of ozone which is common to other types of air purifiers. These botched federal out of retaliation war crimes that were committed against The Plaintiff and her family by The Defendants so that these criminals could get grants, federal/billionaire private corporations informant monies, contracts off of The Plaintiff's family residence in Palmetto Georgia Fulton/Fayette Counties being listed and used for illegal Medical Research purposes with VEOLIA WATER TECHNOLOGIES AND SOLUTIONS water treatment/pumping/maintenance stations in rural areas of Palmetto Georgia without The Plaintiff and her family's consent. The Defendants have turned The Plaintiff's family private residences and private vehicles into war crime torture chambers to desperately attempt to control the outcome of The Plaintiff's Federal Court Case Proceedings. These Federal Obstruction War Crimes also fall under involuntary servitude/human trafficking SLAVERY. The Plaintiff will continue to FILE every legal motion possible with The Federal Courts to continue to document these war crime atrocities/ assaults/civil rights violations/human rights abuses/violence against Black American Women/involuntary servitude human trafficking CRIMES arrogantly committed by ALL OF THE DEFENDANTS. The Racketeering (R.I.C.O) Ring Government Federal and State

> Employee Defendants along with their Criminal Private Company Hires are all CHEATING and deserve sanctions. The admissible evidence The Plaintiff was able to obtain clearly proves that The Defendants are attempting assassinations and by unconstitutionally subjecting The Plaintiff and her family to dangerous torturous toxic research (Using The Black American Pro Se' Plaintiff and Her Black American Family on American Soil) proves that a Expedited Federal Court Date and Ruling need to be held immediately in The Plaintiff's favor. The Defendants are literally racially discriminating (by paying U.S. Government Central Intelligence Agencies (CIA), Foreign Government Intelligence Agencies, Ex Military, Ivy League Professors/Doctors and or contracted and subcontracted assassin's to build electrospray devices that emit poisonous chemicals/substances) against The Plaintiff and her family and trying to also give them all life altering debilitating illnesses (cancers) in desperate hopes that their barbaric illegal actions would end their lives while also illegally using The Plaintiff and her family without their consent for national and international research crash dummies to desperately win a NOBEL PRIZE AND AWARD against MANY LAWS AND MANY CONSTITUTIONAL RIGHTS ON AMERICAN SOIL AS IF THEY AREN'T AMERICANS AND AS IF THE CONSTITUTION DOESN'T EXIST.

Pl.'s Mot. for Second TRO at 2-3. While it is unclear what injunctive relief Plaintiff is seeking, it is clear that both motions fail as a matter of a law.

In order to obtain a temporary restraining order or preliminary injunction, Plaintiff must demonstrate: (1) a substantial likelihood of success on the merits; (2) that irreparable injury will be suffered if the injunction is not granted; (3) that the threatened injury to Plaintiff absent an injunction outweighs the damage to Defendant if an injunction is granted; and (4) that granting the injunction would not be adverse to the public interest. Four Seasons Hotels & Resorts v. Consorcio

14

Barr, 320 F.3d 1205, 1210 (11th Cir. 2003); Morgan Stanley BW, Inc. v. Frisby, 163 F. Supp. 2d 1371, 1374 (N.D. Ga. 2001).  A temporary restraining order is "an extraordinary and drastic remedy" and should be granted only when the movant clearly carries the burden of persuasion as to each of the four prerequisites.  Id.

A court may issue a temporary restraining order without notice to the adverse party or its attorney only if:

> (A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and

> (B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required.

FED. R. CIV. P. 65(b)(1).  "The stringent restrictions imposed by [Rule 65] on the availability of *ex parte* temporary restraining orders reflect the fact that our entire jurisprudence runs counter to the notion of court action taken before reasonable notice and an opportunity to be heard has been granted both sides of a dispute."  Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers Local No. 70 of Alameida Cty., 415 U.S. 423, 438-39 (1974).  To the extent they are entered, *ex parte* temporary restraining orders "should be restricted to serving their underlying purpose of preserving the status quo and preventing irreparable harm just so long as is necessary to hold a hearing, and no longer."  Id. at 439.

Although proceeding with an *ex parte* TRO as provided under Federal Rule

of Civil Procedure 65(b) is permissible in some circumstances, Plaintiff has not

shown that those circumstances are present in this case.  Plaintiff's Amended

Complaint does not demonstrate specific facts that clearly show that immediate

and irreparable injury will result before Defendants can be heard in opposition.

See Am. Compl  Additionally, Plaintiff does not argue (let alone show) a sufficient

reason for not affording Defendants notice of the motion and an opportunity to

respond.

Additionally, Plaintiff has not argued or demonstrated that she is

substantially likely to succeed on the merits of any claim.  Nor has she explained

what injunctive relief she is seeking, or that she will suffer irreparable injury if an

injunction is not granted.  Accordingly, Plaintiff's Motion for TRO and Second

Motion for TRO are **DENIED**.

## IV.    MOTION TO DISMISS - INSUFFICIENCY OF SERVICE OF PROCESS

Choice Hotels and Terminix have moved to dismiss Plaintiff's complaint for

failure to serve process within the ninety days prescribed by Rule 4(m) of the

Federal Rules of Civil Procedure.  Choice Hotel's Mot. to Dismiss at 3; Terminix's

Mot. to Dismiss at 2-3.  Additionally, this Court has ordered Plaintiff to show

cause why this case should not be dismissed in its entirety for failure to serve

process on any Defendant within the ninety days prescribed by Rule 4(m).  Jan. 4,

2022, Order.

"If a defendant is not served within 90 days after the complaint is filed, the

court—on motion or on its own after notice to the plaintiff—must dismiss the

action without prejudice against that defendant or order that service be made

within a specified time." FED. R. CIV. P. 4(m) (emphasis added).  Under Rule

12(b)(5) of the Federal Rules of Civil Procedure, a defendant may bring a motion

to dismiss for insufficient service of process. FED. R. CIV. P. 12(b)(5).  The

burden is on the plaintiff to establish the validity of the service on the defendant; in

determining whether the burden has been met, the court shall apply the same

standards of proof governing motions to dismiss for lack of personal jurisdiction.

Lowdon PTY Ltd. v. Westminster Ceramics, LLC, 534 F. Supp. 2d 1354, 1360

(N.D. Ga. 2008).   In this context, the Eleventh Circuit has held that "a prima facie

case is established if the plaintiff presents sufficient evidence to defeat a motion for

a directed verdict." Morris v. SSE, Inc., 843 F.2d 489, 492 (11th Cir. 1988).  If the

plaintiff establishes a *prima facie* case, then the defendant, as the moving party,

bears the burden of producing affidavits that, in non-conclusory fashion,

demonstrate the absence of service.  Lowdon PTY Ltd., 534 F. Supp. 2d at 1360

(citing Meier ex rel. Meier v. Sun Int'l Hotels, Ltd., 288 F.3d 1264, 1269 (11th Cir.

2002)).  If the plaintiff presents countering evidence, "the court must construe all reasonable inferences in favor of the plaintiff" and, given that the Court construes all reasonable inference in favor of the plaintiff, the plaintiff's presentation of sufficient evidence to defeat a motion ends the inquiry favorably to the plaintiff. Id.

### A. Plaintiff Failed to Serve Any Defendant Within the Time Period Prescribed by Rule 4 of the Federal Rules of Civil Procedure and Has Failed to Show Good Cause for This Failure.

Plaintiff's Complaint was filed on August 4, 2022 [Doc. 1].  The ninety-day period to serve Defendants expired on November 2, 2022, and there is no evidence in the record to indicate that any Defendant was served within the ninety days prescribed by Rule 4(m).  However, Rule 4(m) provides that "if the plaintiff shows good cause for the failure [to timely perfect service], the court must extend the time for service for an appropriate period." FED. R. CIV. P. 4(m).  "Good cause exists only when some outside factor, such as reliance on faulty advice, rather than inadvertence or negligence, prevented service." Lepone-Dempsey v. Carroll Cnty. Comm'rs, 476 F.3d 1277, 1281 (11th Cir. 2007) (internal punctuation and citation omitted).  In light of Plaintiff's pro se status, the Court ordered Plaintiff to show cause why this case should not be dismissed for failure to effectuate service pursuant to Rule 4(m).  Jan. 4, 2022, Order [Doc. 14].

Plaintiff responded to the Court's Order on January 17, 2023, admitting that she had not read the entirety of Rule 4 of the Federal Rules of Civil Procedure. See Pl.'s Resp. to Show Cause Order ("Pl.'s Resp. to Show Cause") [Doc. 17] at 5 ("Also in January 2023 The Plaintiff read the entire rule for summons, The Plaintiff only read the Waiver of Process summons portion of this rule when she mailed off her Waivers of Process to The Defendant's."). Although she filed a response, including 382 pages of exhibits with no apparent relation to the service of Defendants, Plaintiff failed to demonstrate, or even argue, good cause for failing to serve any Defendant within the time prescribed by Rule 4(m). Id. Similarly, Plaintiff's 147-page, single-spaced response to Choice Hotels' Motion to Dismiss with 108 pages of exhibits, failed to demonstrate, or even argue, good cause for failing to serve any Defendant within the time prescribed by Rule 4(m). See Pro Se Pl.'s Opp'n/Answers to the Def.'s Mot. to Dismiss ("Pl.'s Resp. to Choice Hotels' Mot. to Dismiss") [Doc. 15].

Instead, Plaintiff appears to argue that mailing requests for waiver of service to Defendants via the United States Postal Service is sufficient to satisfy Rule 4. See Pl.'s Resp. to Choice Hotels' Mot. to Dismiss at 16 ("This is also evidence of The Plaintiff Serving The Defendant's [sic], through USPS is also a form of public record."). The Eleventh Circuit has made clear that mailing requests for waiver of

service does not satisfy a plaintiff's service requirement under Rule 4, expressly stating that a plaintiff is still "responsible for formally serving the defendants when the waiver forms [a]re not returned." Lepone-Dempsey, 476 F.3d at 1282. Moreover, even if mailing the waiver requests satisfied Rule 4(m)'s service requirement, Plaintiff's argument would fail here because she did not mail the requests for waiver until after the expiration of the ninety-day time limit. See Requests for Waiver of Service [Doc. 15-2 at 1-4] (indicating that they were mailed on November 10, 2022, eight days after the expiration of the ninety-day period prescribed by Rule 4(m)).

Accordingly, the Court finds that Plaintiff has failed to demonstrate that she served any Defendant within the ninety-days prescribed by Rule 4(m) and has also failed to satisfy the good-cause showing for this failure to effectuate service despite being given multiple opportunities to do so.

### B. No Circumstances Exist That Warrant Extending the Time for Plaintiff to Serve Defendants.

"[W]hen a district court finds that a plaintiff fails to show good cause for failing to effect timely service pursuant to Rule 4(m), the district court must still consider whether any other circumstances warrant an extension of time based on the facts of the case." Lepone-Dempsey, 476 F.3d at 1282. Such circumstances include "if the applicable statute of limitations would bar the refiled action, or if

the defendant is evading service or conceals a defect in attempted service." <u>Id.</u>

"Only after considering whether any such factors exist may the district court exercise its discretion and either dismiss the case without prejudice or direct that service be effected within a specified time." <u>Id.</u>  The Eleventh Circuit requires the Court to consider such factors, but the existence of any one factor, such as the running of the statute of limitations, is not determinative and "does not require that the district court extend time for service of process under Rule 4(m)." <u>Id.</u>

Plaintiff has not presented any circumstances that warrant an extension of time to serve Defendants in this case.  As shown below in Section V, it is not clear what claims Plaintiff is asserting in this case so it is difficult to ascertain whether dismissing this case without prejudice would affect Plaintiff's ability to re-file under any applicable statute of limitations.  However, even assuming that a particular of statute of limitations has expired, even combined with Plaintiff's pro se status, these are not circumstances that sufficiently aggregate to warrant an extension of time.  Plaintiff may have mistakenly believed that mailing the requests for waiver of service constituted valid service under the Federal Rules, but Plaintiff did not mail the requests for waiver of service until after the expiration of ninety-day period and Plaintiff's "pro se status does not exempt a party from compliance with relevant rules of procedural and substantive law." <u>Asad v. Crosby</u>, 158 F.

App'x 166, 171 n.4 (11th Cir. 2005) (internal quotation and citation omitted). Plaintiff admits that she did not bother to read Rule 4, and to hold that complete disregard of Rule 4(m) "constitutes good cause for untimely service would allow the good cause exception to swallow the rule." Id.

After considering the factors surrounding Plaintiff's failure to timely perfect service, the Court declines to exercise its discretion to direct that service be effected within a specified time. Similarly, the Court does not consider the purported service of Choice Hotels on January 25, 2022, timely as Plaintiff has not shown, or even argued, good cause for failing to serve within the time period prescribed by Rule 4(m) and has not moved to extend the time to serve any Defendant. Instead, the Court exercises its discretion to **DISMISS** the case against all Defendants without prejudice for failure to serve Defendants within the time period prescribed by Rule 4(m). See Lepone-Dempsey, 476 F.3d at 1282; FED. R. CIV. P. 4(m).[5]

---

[5] Because this Court finds that Plaintiff has failed to serve Defendants within the time period prescribed by Rule 4m, the Court does not reach Choice Hotels's and Terminix's argument that Plaintiff has failed to state a claim against them upon which relief can be granted. See Choice Hotel's Mot. to Dismiss at 3-6; Terminix's Mot. to Dismiss at 3-6.

## V.    CONCLUSION

For the foregoing reasons, it is hereby **ORDERED** that Plaintiff's Petition and Motion for Temporary Restraining Order and/or Preliminary Injunction [Doc. 9] and Plaintiff's Petition and Second Motion for Temporary Restraining Order and/or Preliminary Injunction [Doc. 22] are **DENIED**.

It is further **ORDERED** that Defendant Choice Hotels International, Inc.'s Motion to Dismiss [Doc. 12] and Terminix Global Holdings, Inc.'s Motion to Dismiss [Doc. 26] are **GRANTED**.  Plaintiff's lawsuit is **DISMISSED WITHOUT PREJUDICE**.

It is further **ORDERED** that Plaintiff's Motion for U.S. Marshals to Serve Summons [Doc 18] is **DENIED AS MOOT**.

**IT IS SO ORDERED** this 13th day of April, 2023.

_Mark H. Cohen_
MARK H. COHEN
United States District Judge